UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GARLAND BRYANT, JR.,

    Plaintiff,

v.                                                  Case No. 6:08-cv-252-Orl-35DAB

SCOTT MOSTERT, et al.,

    Defendants.

## ORDER

This case is before the Court on the following motions: (1) Defendants Scott Mostert and R.W. Nelson's Motion for Summary Judgment (Doc. No. 74), and Defendant Jo Lynn Nelson's Motion to Dismiss Amended Complaint (Doc. No. 81). Plaintiff filed a Response to the Motion for Summary Judgment (Doc. No. 83) and a Response to the Motion to Dismiss Amended Complaint (Doc. No. 101). As discussed hereinafter, the motions are granted, and the instant case is dismissed.

### I.    *Factual Background*[1]

Plaintiff, a prisoner of the State of Florida proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against Defendants Scott Mostert ("Mostert"), R.W. Nelson, and Jo Lynn Nelson (collectively "Defendants"). Defendants Mostert and R.W. Nelson are

---

[1]The following statement of the facts is derived from Plaintiff's amended complaint (Doc. No. 48), the allegations of which this Court must take as true in ruling on a motion to dismiss. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corporation S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Additionally, the statement of facts is derived from the affidavits and other evidence submitted by Plaintiff and Defendants in support of, or in opposition to, the dispositive motions.

detectives for the Melbourne Police Department, and Defendant Jo Lynn Nelson is an assistant state attorney. (Doc. No. 48 at 8-9.) Plaintiff contends that Defendants violated his Fourth Amendment right against illegal search and seizure, his Fourteenth Amendment right to due process, and his Fourteenth Amendment right to equal protection, and conspired to violate his civil rights in violation 18 U.S.C. § 242. (Doc. No. 48 at 10.)

Specifically, Plaintiff asserts five claims. First, he contends that Defendants Mostert and Jo Lynn Nelson violated his Fourteenth Amendment right to equal protection by refusing to prosecute the individuals who burglarized his home. Plaintiff next asserts that Defendants Mostert and Jo Lynn Nelson illegally removed items from his home, namely pornographic magazines, and subsequently attempted to conceal their actions in violation of his Fourth Amendment rights. Likewise, Plaintiff contends that Defendants Mostert and Jo Lynn Nelson violated his right against illegal search and seizure by recording a telephone conversation between Plaintiff and a minor during the investigation of his criminal cases. Fourth, Plaintiff maintains that Defendants R.W. Nelson and Jo Lynn Nelson, whom he alleges are either lovers or married, conspired in violation of 18 U.S.C. § 242 to file criminal charges against him without direct involvement in or investigation of his case. Finally, Plaintiff asserts that Defendant Jo Lynn Nelson violated his Fourteenth Amendment right to due process by withholding evidence from him. *Id*. at 10-11.

In support of his claims, Plaintiff maintains that on February 11, 2003, he called the Melbourne Police Department after discovering that his home had been burglarized. *Id*. at 10. Witnesses identified the perpetrators, and the Melbourne Police Department investigated the incident and determined that the perpetrators were three juvenile females.

*Id.*; *see also* Doc. No. 74-2 at 1-7.  Plaintiff contends that Defendants Mostert and Jo Lynn Nelson refused to prosecute the three juveniles, which violated his right to equal protection.

As a result of the investigation into the break-in of Plaintiff's home, an investigation was instigated regarding allegations that Plaintiff had provided minors with drugs and had engaged in sexual activity with minors.  (Doc. Nos. 74-3 & 74-4.)  As part of the investigation, Defendant Mostert and another detective recorded a conversation between Plaintiff and a minor with the minor's permission.  *Id*.  On February 14, 2003, Defendant Mostert obtained and executed a search warrant to look for drug items in Plaintiff's home and shed.  *Id.*; *see also* Doc. No. 74-5.  Thereafter, Plaintiff was arrested.  *Id.*; *see also* 74-8.  Plaintiff was charged in three separate cases as follows: (1) case number 03-12260-CFA with one count of lewd and lascivious conduct; (2) case number 03-08698-CFA with one count of lewd and lascivious molestation and one count of battery; and (3) case number 03-08697-CFA with one count of delivery of a controlled substance to a minor, one count of contributing to the delinquency of a minor, one count of possession of not more than 20 grams of cannabis, and one count of possession drug paraphernalia.  (Doc. No. 74-12 at 4-5.)  On August 12, 2003, Plaintiff entered a plea of guilty to battery, lewd and lascivious conduct, and to possession of drug paraphernalia, and the remaining charges were *nol prossed*.  (Doc. No. 74-12 at 9-14.)

Plaintiff seeks nominal damages of $50,000 from each Defendant, compensatory damages of $100,000 from each Defendant, and punitive damages of $100,000. (Doc. No. 48 at 13.)  Plaintiff also requests injunctive relief prohibiting Defendants from retaliating

against him or his family, and he requests the United States Attorney General's Office to pursue criminal sanctions against Defendants. *Id.*

## II. *Legal Standards*

When considering a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007); *see also Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain a short and plain statement demonstrating an entitlement to relief, and the statement must "give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2507 (2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

A plaintiff must supply "'enough facts to state a claim to relief that is plausible on its face,' rather than merely 'conceivable.'" *Huggins v. Marriott Ownership Resorts, Inc.*, 2008 WL 552590, *2, Case No. 6:07-cv-1514-Orl-22KRS (M.D. Fla. Feb. 27, 2008) (discussing *Twombly* in dismissing claims for breach of implied duty of good faith and fair dealing) (Conway, J.) (quoting *Twombly*, 127 S. Ct. at 1969, 1974). Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citations omitted). "Factual allegations must

be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1965.

Dismissal is also warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of the plaintiff's complaint, there remains a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992). Although in the case of a *pro se* action, the Court should construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if it appears that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing that there is no genuine issue of material fact lies on the moving party, and it is a stringent one. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rule 56(e) further provides as follows:

> When a motion for summary judgment is made and supported as provided on this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing there is a genuine issue of fact for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Essentially, the nonmoving party, so long as that party has had an ample opportunity to conduct discovery, must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d

1573, 1577 (11th Cir. 1990). If, after the movant makes its showing, the nonmoving party brings forth evidence in support of its position on an issue for which it bears the burden of proof at trial that "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted).

## III.   Analysis of Motions

### A.   Statute of Limitations

In both the motion to dismiss and the motion for summary judgment, Defendants assert that the instant action is barred by the statute of limitations. Defendants assert that the only date that Plaintiff specifically identifies is February 11, 2003, the date on which he contacted the Melbourne Police Department. Additionally, Defendants assert that Plaintiff either knew or should have known that he had suffered the injuries of which he complains in this action and who inflicted those injuries no later than August 12, 2003, the date he was convicted for the offenses which underlie the claims he raises in his amended complaint. As such, Defendants contend that the instant action which was initiated on February 9, 2008, was not timely filed.

"Florida's four-year statute of limitations applies to such claims of deprivation of rights under 42 U.S.C. §[] 1983. . . ." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (citing *City of Hialeah v. Rojas*, 311 F.3d 1096, 1102 n. 2 (11th Cir. 2002)). "A cause of action under [Section 1983] will not accrue, and thereby set the limitations clock running, until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." *Id*. (citing *Mullinax v. Mc Elhenny,* 817 F.2d 711, 716 (11th Cir. 1987)).

Plaintiff filed this action on February 9, 2008.² As discussed previously, Plaintiff alleges five claims. First, he contends that his Fourteenth Amendment right to equal protection was violated when Defendants refused to prosecute the individuals who burglarized his home. Second, Plaintiff asserts that Defendants illegally removed items from his home, namely pornographic magazines, and subsequently attempted to conceal such action in violation of his Fourth Amendment rights. Third, Plaintiff contends that Defendants violated his right against illegal search and seizure by recording a telephone conversation between Plaintiff and a minor during the investigation of his criminal case. Fourth, Plaintiff maintains that Defendants conspired in violation of 18 U.S.C. § 242 to file criminal charges against him without direct involvement or investigation into his case. Finally, Plaintiff asserts that Defendant Jo Lynn Nelson violated his Fourteenth Amendment right to due process by withholding evidence from him. *Id*. at 10-11.

Plaintiff's allegations and the evidence presented in this case demonstrate that Plaintiff knew that his home was burglarized on February 11, 2003. Moreover, Plaintiff was aware that his home was searched and items were seized on February 14, 2003, and he

---

²A document is "filed" by a prisoner on the date the prisoner places the complaint in the mail or delivers it to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (a notice of appeal filed by an incarcerated *pro se* litigant was deemed filed at the time the inmate relinquished control of it to prison officials); *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993) (in *pro se* prisoner rights cases and Federal Torts Claims Act suits, the date of filing is the date of delivery to prison officials). The Court notes that Defendant Jo Lynn Nelson was not included as a party in the initial complaint filed in this case. Instead, on April 10, 2008, Plaintiff initiated a separate case, case number 6:08-cv-573-Orl-19KRS, against Defendant Jo Lynn Nelson. That case was consolidated with the instant case, and Plaintiff was directed to file an amended complaint which he did on July 31, 2008. For purposes of determining whether the instant case was filed within the statute of limitations, the Court concludes that, regardless of which case or complaint the Court uses to determine the timeliness of the instant action, the instant action was not timely filed.

was also arrested on that date. Furthermore, the evidence demonstrates that Plaintiff entered a plea of guilty to three charges on August 12, 2003. As such, the Court concludes that Plaintiff either knew or should have known of all of the injuries and of all of the parties who injured him no later that August 12, 2003, given that all of his claims relate to the prosecution of criminal charges against him, how those charges came to be filed, and the evidence used to support those charges. Plaintiff has not demonstrated that he did not know until February 9, 2004, four years prior to filing the instant action, that the juveniles, who allegedly burglarized his home and whose actions subsequently resulted in his arrest, were not prosecuted. Likewise, Plaintiff has not demonstrated that he was not aware until February 9, 2004, that a telephone conversation in which he was a participant was recorded during the investigation of his criminal cases. Likewise, Plaintiff's home was searched on February 14, 2003, while he was present. Therefore, all of the events surrounding Plaintiff's claims and the persons involved in those events should have been known no later than August 12, 2003, which date is more than four years from February 9, 2008, the date the instant action was initiated. Therefore, Plaintiff's claims are barred by the statute of limitations. In an abundance of caution, however, the Court will address the merits of Plaintiff's claims.

### B. Motion to Dismiss

Defendant Jo Lynn Nelson asserts *inter alia* that the complaint against her should be dismissed because she is entitled to absolute immunity. In support of her argument, she maintains that the actions which form the basis of Plaintiff's claims against her were taken while she was acting in her role as a prosecutor.

"Prosecutors are absolutely immune from § 1983 suits in their individual capacities

8

for actions that are within the scope of their prosecutorial duties." *Quinn v. Roach*, 2009 WL 1181072, *9-10 (5th Cir. 2009) (citing *Brooks v. George County, Miss.*, 84 F.3d 157, 168 (5th Cir. 1996) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)). "Prosecutorial immunity has been extended to a prosecutor's actions in initiating, investigating, and pursuing a criminal prosecution." *Id.* (citing *McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir. 1984); *Cook v. Houston Post*, 616 F.2d 791, 793 (5th Cir. 1980)). "The decision to file or not file criminal charges is protected by prosecutorial immunity." *Id.* (citing *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990)). Moreover, "prosecutors . . . are entitled to absolute immunity from suit for exercising their discretion to bring charges during the judicial phase of the criminal process, even if the decision is made maliciously." *Omegbu v. Milwaukee County*, 2009 WL 1137730, *1 (7th Cir. 2009) (citing *Imbler*, 424 U.S. at 428-29 (1976); *Hartman v. Moore*, 547 U.S. 250, 261-62 (2006); *Spiegel v. Rabinovitz*, 121 F.3d 251, 256-57 (7th Cir. 1997)).

Plaintiff's claims against Defendant Jo Lynn Nelson consist of allegations that she refused to prosecute juveniles who burglarized Plaintiff's home, investigated Plaintiff in relation to his criminal charges, participated in an allegedly illegal search, seizure, and suppression of evidence, and conspired to file criminal charges against him. Such actions or inactions are actions which prosecutors perform in the scope of their prosecutorial duties. *See, e.g.*, *Lloyd v. Foster*, 298 Fed. Appx. 836, 839 (11th Cir. 2008) (concluding that prosecutorial immunity applied to allegations that state attorneys conspired to prosecute the plaintiff "on a bogus charge and arranged to have a fraudulent search warrant issued to raid his house. . . ."); *see also Lloyd v. Card,* 283 Fed. Appx. 696 (11th

Cir. 2008). The Court concludes, therefore, that Defendant Jo Lynn Nelson is entitled to absolute immunity from the claims Plaintiff alleges against her. Accordingly, Defendant Jo Lyn Nelson's Motion to Dismiss the Amended Complaint is **GRANTED**.[3]

### C. *Motion for Summary Judgment*

Defendants Mostert and R.W. Nelson assert that they are entitled to summary judgment based on the doctrine of qualified immunity. In support of their argument, they maintain that Plaintiff has failed to demonstrate that they violated any of Plaintiff's constitutional rights.

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "In any action under section 1983, the plaintiff must prove that (1) he or she has been deprived of a right secured by the United States constitution or laws, and (2) the defendant who allegedly caused that deprivation acted under color of state law." *Ross v. Duggan*, 402 F.3d 575, 581 (6th Cir. 2004) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[3]Because the Court has determined that Defendant Jo Lynn Nelson is entitled to absolute immunity, the Court does not address the merits of Plaintiff's claims against her. However, the Court notes that the same analysis would apply to Plaintiff's equal protection, illegal search and seizure, conspiracy, and due process claims against Defendant Jo Lynn Nelson as is discussed *infra* in relation to Defendants Mostert and R.W. Nelson.

constitutional rights of which a reasonable person would have known.'" *Quinn v. Roach* 2009 WL 1181072, *3 (5th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Lumley v. City of Dade City*, 327 F.3d 1186, 1193-94 (11th Cir. 2003) ("[q]ualified immunity protects government officials sued in their individual capacities as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Carr v. Tatangelo,* 338 F.3d 1259, 1266 (11th Cir. 2003) (citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his individual capacity involves a two-step analysis. *Hope v. Pelzer,* 536 U.S. 730 (2002). A government official first must demonstrate that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Rich v. Dollar,* 841 F.2d 1558, 1563-64 (11th Cir. 1988) (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir. 1983)). If the defendant satisfies this burden, the first prong of the test requires the plaintiff to show either that the official's actions "violated clearly established constitutional law" or a federal statute. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* at 201. However, "if a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Saucier*, 533 U.S. at 201).

*Saucier* required courts to consider these two steps sequentially and prohibited

courts from skipping the first step and proceeding directly to the second step. *See Saucier*, 533 U.S. at 201. In *Pearson v. Callahan*, 129 S. Ct. 808 (2009), however, the Court held that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and that judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

As an initial matter, pursuant to the allegations in the amended complaint and the evidence submitted in support of, and in opposition to, the motion for summary judgment, the Court finds that Defendants Mostert and R.W. Nelson were acting within the scope of their discretionary authority as police officers during the incidents that form the basis of Plaintiff's claims. The Court, therefore, will next consider whether Plaintiff has demonstrated that Defendants Mostert or R.W. Nelson violated a clearly established constitutional law or a federal statute.

Plaintiff contends that Defendant Mostert violated Plaintiff's Fourth and Fourteenth Amendment rights. First, Plaintiff asserts that Defendant Mostert violated his right to equal protection by refusing to prosecute the juveniles who burglarized his home.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "'[T]o properly plead an equal protection claim, a plaintiff need only allege that through state action, similarly situated persons have been treated

disparately.'" *Boyd v. Peet*, 249 Fed. Appx. 155, 158 (11th Cir. 2007) (quoting *Thigpen v. Bibb County*, 223 F.3d 1231, 1237 (11th Cir. 2000), *abrogated on other grounds* by *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). To determine whether selective enforcement has occurred in violation of the Equal Protection Clause, the Court must consider three factors:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Mitchell v. Boelcke*, 440 F.3d 300, 305-06 (6th Cir. 2006) (quoting *Gardenshire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)).

Plaintiff's amended complaint does not allege any similarly situated person or group with whom the Court can compare him in determining whether he was treated disparately. The amended complaint and evidence demonstrate that the individuals whom Plaintiff seemingly asserts were similarly situated to him are three juvenile females who were under the age of fifteen at the time of the occurrence. When Plaintiff entered his plea of guilty in his criminal cases, however, he was forty-six years of age. Moreover, Plaintiff was arrested and prosecuted for offenses stemming from his possession of drugs and his sexual activity with minors. The juveniles whom he asserts were improperly not prosecuted allegedly burglarized and vandalized Plaintiff's home. Thus, Plaintiff and the juveniles are not similarly situated persons.

Likewise, Plaintiff has not demonstrated that Defendant Mostert initiated prosecution

against him or failed to initiate prosecution against the juveniles for a discriminatory purpose. Finally, Defendant Mostert filed an affidavit in which he attests that his duties requires him to investigate crimes involving narcotics, that he was not involved in the investigation of Plaintiff's allegations of property damage, and that he had no decision-making authority concerning the filing of charges against anyone suspected of committing the reported damage of Plaintiff's property. (Doc. No. 75-2.) The Court concludes, therefore, that Plaintiff has neither pled nor demonstrated that Defendant Mostert violated his right to equal protection.

Plaintiff next asserts that Defendant Mostert illegally searched and removed items from his home, specifically pornographic magazines. The Fourth Amendment provides that: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. Thus, unless consent is given, generally, law enforcement officers must obtain a warrant supported by probable cause to justify a search pursuant to the Fourth Amendment. *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005). Additionally, seizures pursuant to the plain view doctrine will be upheld if: (1) the officers did not "violate the Fourth Amendment 'in arriving at the place from which the evidence could be plainly viewed . . . .'; [(2)] the incriminating character of the evidence [was] immediately apparent, … [and (3)] the officers . . . [had] a lawful right of access to the object itself." *Horton v. California*, 496 U.S. 128, 136 (1990).

In the instant case, the evidence demonstrates that Defendant Mostert had a valid warrant to search Plaintiff's home for drugs and drug paraphernalia. *See* Doc. No. 74-5. Therefore, Defendant Mostert had a legitimate right to search Plaintiff's home. During the

14

police interviews of the juveniles, Defendant Mostert became aware that the juveniles made allegations that Plaintiff had engaged in sexual activity with minors. (Doc. No. 74-2 at 4-7; Doc. No. 74-3; Doc. No. 75-2 at 2.) The pornographic magazines which Plaintiff contends were taken, included magazines entitled, "Just Come of Age," "Live Young Girls," and "Babyface."[4] (Doc. No. 83-2 at 50-52.) Moreover, the magazines were contained on a magazine rack located in Plaintiff's bedroom. *See* Doc. No. 83-2 at 49. Therefore, the Court concludes that pursuant to the plain view doctrine Defendant Mostert did not violate Plaintiff's Fourth Amendment right against illegal search and seizure given the nature of the allegations against Plaintiff, the location of the magazines, and the incriminating nature of the magazines in light of the allegations against Plaintiff.

Plaintiff next contends that Defendant Mostert violated his Fourth Amendment rights by recording a telephone conversation between Plaintiff and a minor without Plaintiff's consent. Pursuant to Florida law,

> It is lawful under ss. 934.03-934.09 for an investigative or law enforcement officer or a person acting under the direction of an investigative or law enforcement officer to intercept a wire, oral, or electronic communication when such person is a party to the communication or <u>one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act</u>.

§ 934.03(3)(c), Fla. Stat. (emphasis added). Furthermore, "Supreme Court cases have consistently held that the government does not violate the fourth amendment by recording

---

[4] Plaintiff provided photographs of the pornographic magazines that were allegedly taken from his home in his response in opposition to the motion for summary judgment. He also submitted a photograph of the magazine rack on which the magazines were located.

and transmitting private conversations with the consent of one of the parties, even though the other party does not know his conversation is being recorded or transmitted." *United States v. Shields*, 675 F.2d 1152, 1158 (11th Cir. 1982) (citing *United States v. Caceres*, 440 U.S. 741 (1979); *United States v. White*, 401 U.S. 745 (1971); *Lewis v. United States*, 385 U.S. 206 (1966); *Hoffa v. United States*, 385 U.S. 293 (1966); *Lopez v. United States*, 373 U.S. 42 (1963); *On Lee v. United States*, 343 U.S. 747 (1952)).

There is no question that the telephone conversation about which Plaintiff complains was initiated by Defendant Mostert during the course of a criminal investigation. Furthermore, Defendant Mostert attests that the other individual, who was part of the telephone conversation, consented to the call being recorded. *See* Doc. No. 75-2 at 2. Accordingly, the Court finds that Defendant Mostert did not violate Plaintiff's Fourth Amendment rights by recording one of his telephone conversations.

Plaintiff further asserts that Defendants R.W. Nelson and Jo Lynn Nelson conspired to violate his civil rights in violation of 18 U.S.C. § 242. In support of his claim, Plaintiff asserts that Defendant R.W. Nelson filed felony charges against him at the direction of Defendant Jo Lynn Nelson without any investigation.

Section 242, Title 18 of the United States Code provides in pertinent part:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, . . . , on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both. . . .

18 U.S.C. § 242.

Defendant R.W. Nelson filed an affidavit in which he attests that he was not involved in the investigation of the drug or sexual abuse allegations against Plaintiff, he did not interview any witnesses or file any criminal charges against Plaintiff, and that his only involvement in any of the criminal cases from which Plaintiff's claims arise was that he notarized another officer's signature on an arrest affidavit. (Doc. No. 75-3 at 2.) Defendant R.W. Nelson further attests that he has never been married to, or romantically involved with, Defendant Jo Lynn Nelson. *Id*.

Pursuant to Florida law,

> [l]aw enforcement officers, correctional officers, and correctional probation officers, as defined in s. 943.10, and traffic accident investigation officers and traffic infraction enforcement officers, as described in s. 316.640, are authorized to administer oaths when engaged in the performance of official duties. . . .  An officer may not notarize his or her own signature.

§ 117.10, Fla. Stat.  In the instant case, Plaintiff has not demonstrated that Defendant R.W. Nelson was involved in either the investigation of his criminal cases or in his arrest in those cases except to the extent Defendant R.W. Nelson notarized a fellow officer's signature on an arrest affidavit.  Such action cannot be said to result in a constitutional violation.

Moreover, Plaintiff actually entered a plea of guilty to the charge of lewd and lascivious conduct which was predicated on the acts for which he was arrested pursuant to the arrest affidavit that Defendant R.W. Nelson notarized.  Therefore, for this Court to conclude that Defendant R.W. Nelson violated Plaintiff's constitutional rights by allegedly filing felony charges against him would necessarily implicate the validity of Plaintiff's conviction.

17

The United States Supreme Court has held as follows:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.
>
> . . . .
>
> . . . We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action. Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. . . . [A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnotes omitted).

The Court concludes that a judgment in favor of Plaintiff on this claim would necessarily imply the invalidity of Plaintiff's conviction for lewd and lascivious conduct. Plaintiff seeks damages directly attributable to his conviction for lewd and lascivious conduct. However, he has not alleged or otherwise demonstrated that his conviction has been invalidated; consequently, the instant claim is not cognizable under section 1983 and must be dismissed.

Accordingly, it is hereby **ORDERED** as follows:

1. Defendants Scott Mostert and R.W. Nelson's Motion for Summary Judgment (Doc. No. 74) is **GRANTED**.

2. Defendant Jo Lynn Nelson's Motion to Dismiss Amended Complaint (Doc. No. 81) is **GRANTED**.

3. The **Clerk of the Court** is directed to enter judgment in favor of Defendants and against Plaintiff.

4. The **Clerk of Court** is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 7th day of July 2009.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies to:
sc 7/7
Garland Bryant, Jr.
Counsel of Record